**Deane Padgett DODGE, Appellant,**

v.

**Mary Ann WATTS, Appellee.**

**No. 07–93–0116–CV.**

Court of Appeals of Texas,
Amarillo.

May 16, 1994.

Culton, Morgan, Britain & White, Wyatt L. Brooks, David M. Russell, Amarillo, for appellant.

Rick Keffler, Peterson, Farris, Doores & Jones, William M. Thornberry, Amarillo, for appellee.

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

POFF, Justice.

Upon consideration of appellee's motion for rehearing, we grant the motion for rehearing, withdraw our original opinion and judgment, and substitute this opinion and judgment in lieu thereof.

Appellee, Mary Ann Watts, brought suit against appellant, Deane Padgett Dodge, to recover for personal injuries arising out of a motor vehicle accident. Trial was before a jury which found appellant to be 100% at fault. The jury awarded appellee $50,000 in damages. By two points of error, appellant complains of the damage award.

At issue in this appeal is Question No. 3 in the court's charge which we set forth below:

What sum of money, if paid now as cash, would fairly and reasonably compensate Mary Ann Watts for her injuries, if any, that resulted from the occurrence in question?

Consider the elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find.

Element a.   Reasonable expenses of necessary medical care.

Element b.   Physical pain and mental anguish.

Element c.   Physical impairment.

Element d.   Reasonable cost of replacing broken glasses.

Do not reduce the amounts, if any, in your answers because of the negligence, if any, of Mary Ann Watts.

Answer in dollars and cents for damages, if any, that were sustained in the past and that in reasonable probability will be sustained in the future.

Answer: $50,000.

In his first point of error, appellant charges that the trial court erred in submitting physical impairment as an element of damages to be considered by the jury because there was no evidence to support such submission. Appellant contends that the alleged error resulted in an excessive damage award. We do not agree with appellant's contention. For reasons which we will express below, we find that the trial court acted properly in submitting physical impairment as an element of damages.

Appellant's argument is novel. He contends that physical impairment damages are awarded for the loss of ability to act while pain and suffering damages are awarded for the pain endured in acting. It follows, appellant contends, that there is no physical impairment where a plaintiff can physically act but chooses not to do so because of the pain that would have to be endured in acting. In oral argument, appellant illustrated his contention with the following example based partially on the facts of the current case:

A woman is injured in an accident. She experiences great pain when she lifts her grandchildren so she doesn't lift her grandchildren as she did before the accident. However, if her grandchildren were inside a burning house, the woman would be physically able to pick up the children and carry them to safety. The woman has experienced no physical impairment. She is only entitled to damages for pain and suffering.

In essence, appellant argues that a plaintiff must be literally unable to perform some act that he or she could do before the event sued upon to be entitled to damages for physical impairment.

Appellant bases his argument on the following language found in *Green v. Baldree*, 497 S.W.2d 342 (Tex.Civ.App.—Houston [14th Dist.] 1973, no writ):

It would not be proper in every personal injury case to instruct the jury that it might consider loss of earning capacity, pain and physical impairment as separate elements of plaintiff's damage. In order to be entitled to that submission the plaintiff must sustain the burden of proving that *the effect of his physical impairment extends beyond any impediment to his earning capacity and beyond any pain and suffering to the extent that it produces a separate and distinct loss* that is substantial and for which he should be compensated.

*Id.* at 350 (emphasis added). This language has been repeated in subsequent cases as well. *See, e.g., Pipgras v. Hart*, 832 S.W.2d 360, 366 (Tex.App.—Fort Worth 1992, writ denied); *Allen v. Whisenhunt*, 603 S.W.2d 242, 244 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ dism'd). The case law, however, has not taken these declarations to mean a plaintiff must be literally unable to perform an act to be entitled to physical impairment damages.

For example, in *Southern Pacific Transportation Co. v. Harlow*, 729 S.W.2d 946 (Tex.App.—Corpus Christi 1987), *writ denied*, 745 S.W.2d 320 (Tex.1988), a jury awarded the plaintiff, Harlow, $400,000 for future physical impairment. After reciting the language from *Green v. Baldree*, the court analyzed the facts of the case before it and upheld the $400,000 award. We quote from the court's opinion:

At trial, Harlow's wife testified that he has been depressed because he is unable to work like he used to. She said that as a result of his injuries, he has given up racquetball and the recreational activities he engaged in before the accident. Dr. Richard DeLuca testified by deposition that Harlow will always "have a good five-

percent physical impairment and loss of physical function to the whole arm which will manifest itself, not on a clinical examination, but only when exposed to extreme stresses." Donald L. Huddle, an economist, testified that Harlow told him that he can no longer do routine car maintenance and heavy home repairs. He is still able *to do yardwork, but it takes him longer.* Dr. Don Baxter testified that during the course of his treatment of Mr. Harlow, the range of motion in his shoulder has improved, but he still suffers pain which he likened to a chronic condition. Appellant has a life expectancy of thirty-six more years. There was testimony that continued use of his arm for any strenuous tasks would aggravate his shoulder.

*Southern Pac. Transp. Co. v. Harlow,* 729 S.W.2d at 950–51.

Upon reading the above passage from *Harlow* we conclude that the plaintiff, Mr. Harlow, was not literally unable to play racquetball, do routine maintenance on his car, and perform heavy home repairs. Rather, it appears that Harlow experienced pain when he did those things and that, therefore, he chose not to continue those activities.

■ A similar case is *Lawson–Avila Construction, Inc. v. Stoutamire, et al.,* 791 S.W.2d 584 (Tex.App.—San Antonio 1990, writ denied). In that case, one Keith Schoolcraft [1] suffered injuries and the jury awarded him $10,000 for future physical impairment. The court of appeals found the evidence was sufficient to support the award. The pertinent portion of the court's opinion reads as follows:

Schoolcraft stated that he liked to do a lot of outdoor sports such as fishing, hunting, and playing golf, but no longer could golf, fish, and hunt in the same amounts as he did before the accident. He testified that he had been riding horses his entire life. Additionally, Schoolcraft testified if he did anything strenuous, his back would start hurting. He stated that his back continued to hurt and bother him. His back bothers him "in the morning's after

he's been sleeping for a while," and bothered him "after he does any kind of lifting of heavier than normal things."

\*　　\*　　\*　　\*　　\*　　\*

Dr. Kiepfer testified "if Schoolcraft could tolerate horseback riding it would be good exercise for his back, but if it hurt him he would have to try it and then stop." As a result of that recommendation, the Dr. testified, appellee sold his horses, because when the appellee tried riding horseback it hurt appellee's back, although appellee had been riding horses his entire life.

The Dr. further testified that appellee was still under care for continued pain in his back. He stated that when he last saw the appellee, the appellee was walking with a slight limp and was having trouble sleeping because of back pain. The Dr. testified that appellee, who was only 27 years old, could expect to continue having back pain for the rest of his life. He further testified that appellee would "have to restrict his activities for the rest of his life." Moreover, he stated that he anticipated that appellee's condition would become worse as time passes. We find that the evidence was sufficient to support a jury award for physical impairment in the future. . . .

*Id.* at 600. From our reading of *Stoutamire,* we concluded that Mr. Schoolcraft was able *to ride horses and engage in sports but such* activities caused him a lot of pain. These facts entitled Schoolcraft to damages for physical impairment. The *Stoutamire* and *Harlow* cases demonstrate that a person need not be literally unable to perform an act that he was able to perform before the event sued upon to be entitled to physical impairment damages.

Appellant's first point of error depends entirely upon our acceptance of his contention that physical impairment damages are appropriate only when a person is literally unable to perform some act that he was able to perform previously. Since we cannot ac-

---

1. Schoolcraft was injured in an accident on a construction site. Gregory Paul Stoutamire was killed in the same accident.

cept this contention, point of error one is overruled.

 In his second point of error, appellant argues that the trial court erred in refusing to grant his motion for new trial because the evidence was insufficient to support the jury's award of damages. We disagree.

Appellee testified that following the automobile accident, she could no longer work on the farm or sell cosmetics like she used to be able to do. Appellee testified that she is no longer able to pick up her grandchildren. She testified that she is no longer able to clean her house on Saturday. This is certainly some evidence in support of the jury's verdict. Moreover, the jury was not asked to segregate its damage award between damages for physical impairment, pain and anguish, necessary medical care and broken glasses. The record is replete with evidence of appellant's pain. The record also evidences damages for medical care and broken glasses. We need not detail this evidence further. Suffice it to say that the evidence serves to support the jury's award of $50,000. Point of error two is overruled.

■ Appellee has moved this court to award her ten percent of the damage award she received in the trial court because, according to appellee, appellant "has taken this appeal for delay and without sufficient cause." Rule 84 of the Texas Rules of Appellate Procedure allows this court to make such an award in cases where we determine that an appellant has taken an appeal for delay and without sufficient cause. We make no such determination in this case, however. Accordingly, appellee's motion is denied.

The judgment of the trial court is affirmed.

### JUDGMENT

The Court's judgment rendered March 31, 1994 in this cause is withdrawn and, in lieu thereof, the following judgment is rendered.

This cause came on to be heard on the transcript of the record and the same being inspected and it appearing to the Court that there was no error in the judgment, it is therefore ordered, adjudged and decreed that the judgment of the trial court be in all things affirmed.

It is further ordered, adjudged and decreed that appellant Deane Padgett Dodge, as principal, and Texas Farmers Insurance, as surety, pay all costs in this behalf expended for which let execution issue.

It is further ordered that this decision be certified below for observance.