**Donald Jerome NELSON and Control Components Corp., Appellants**

v.

**Gary BRITT and Britt Power Devices, L.L.C., Appellees.**

No. 05–06–01535–CV.

Court of Appeals of Texas, Dallas.

Dec. 11, 2007.

Donald Scott Curry, Irving, Steven R. Pierret, Hill Gilstrap, PC, Arlington, TX, for Appellant.

Paul Richard Genender, Jennifer Bellow, Christopher D. Kratovil, Hughes & Luce, L.L.P., Dallas, for Appellee.

Before Justices WHITTINGTON, BRIDGES, and FRANCIS.

## OPINION

Opinion by Justice FRANCIS.

Control Components Corporation and its president, Donald Jerome Nelson, appeal the trial court's judgment imposing death penalty sanctions against CCC and award-ing damages, attorney's fees, and costs against both CCC and Nelson, jointly and severally. In seven issues, appellants challenge both the sanctions and money judgment. For reasons set out below, we reverse the trial court's judgment and remand the cause for further proceedings.

The underlying litigation in this case evolved out of a dispute over attorney's fees in an earlier lawsuit. In that suit, CCC was represented by Fish & Richardson, P.C., and sued Gary Britt and Britt Power Devices, L.L.C. The parties settled the lawsuit, and the settlement agreement contained a confidentiality clause. Afterwards, a dispute arose between F & R and CCC over the payment of attorney's fees. In a series of proceedings, F & R attempted to collect the fees and ultimately obtained a judgment against CCC. To collect on the judgment, F & R sought a turnover order against appellees to redirect the settlement proceeds to F & R. However, CCC had transferred its right to the settlement payments to Nelson, and the court denied turnover relief. During the course of its collection efforts, F & R allegedly violated the confidentiality clause of the settlement agreement, and, as a result, appellees stopped making settlement payments.

Ultimately, F & R sued CCC and Nelson, claiming that the transfer of the right to settlement payments to Nelson was fraudulent. CCC and Nelson generally denied the claim, and CCC brought a third-party petition against appellees for breach of the settlement agreement. Appellees counterclaimed against Nelson, CCC, and F & R for breach of the confidential terms of the settlement agreement.

In December 2005, CCC and Nelson's attorney filed a motion to withdraw from the case. The trial court granted the motion and ordered CCC to retain new counsel by February 17, 2006. It is undisputed that CCC failed to to do so. Consequent-

ly, in April, appellees filed a motion to strike CCC's pleadings and dismiss with prejudice all of CCC's claims against appellees. In the motion, appellees asserted the court had inherent power to impose the death penalty sanction against CCC "for its bad faith litigation conduct" in failing to obtain new counsel.

In June, appellees filed a Supplemental Motion to Strike Pleadings of Defendant Control Components Corporation, Motion to Sever and Motion for Judgment. In this motion, appellees complained that CCC and Nelson failed to appear in a court-ordered mediation. In addition to the relief sought previously, appellees requested the court to sever their claims against CCC and Nelson; enter final judgment in their favor against CCC and/or Nelson, jointly and severally, in the amount of $164,000, plus attorney's fees, interest, and costs; and grant any "additional and further relief" to which they may be entitled. The $164,000 represented "the amount of monies paid to CCC and/or Donald Nelson under that certain Confidential Release and Settlement Agreement."

■ The trial court held a hearing on appellees' motions. Nelson appeared at the hearing, but CCC did not. It is undisputed that no record was made of the hearing. On the same day, the trial court signed the judgment striking CCC's pleadings as to appellees and dismissing all of CCC's claims against appellees. Further, the judgment ordered that appellees recover $164,000 in actual damages, $10,000 in attorney's fees, and costs from CCC and Nelson, jointly and severally. In the judg-

ment, the trial court recited the following findings and conclusions:

(i) the Britt Defendants' Motions are well taken; (ii) the conduct exhibited by CCC and Nelson warrants the sanctions prayed for in the Motions; (iii) there is a direct relationship between the offensive conduct and the sanction imposed against CCC and Nelson; (iv) the sanction imposed is intended to remedy the prejudice suffered by the Britt Defendants' [sic] and the other parties to the suit; (v) the sanction is not excessive in light of the conduct complained of; and (vi) a less stringent sanction would not fully promote compliance by CCC and Nelson.

By separate order signed on the same day, the trial court severed all causes of action asserted by and between appellees and CCC and Nelson, rendering the judgment final. CCC and Nelson retained counsel, who filed a motion for new trial. The trial court held an evidentiary hearing on the motion, which was overruled.[1] This appeal ensued.

In six issues, CCC and Nelson complain the trial court erred in imposing death penalty sanctions; in awarding damages against CCC and Nelson; by failing to file findings of fact and conclusions of law; entering a final judgment against Nelson without first affording him a trial; and overruling their motion for new trial. Additionally, they complain about the lack of a reporter's record of the sanctions hearing. Our disposition of this appeal rests on different reasons for each appellant; therefore, we separately address CCC and Nelson. We begin with Nelson.

---

1. Our record does not contain an order on the motion, although the docket sheet shows the trial court overruled the motion. However, a docket sheet entry cannot be used to show the existence of an order or judgment. *Bryan v.* *Watumull,* 230 S.W.3d 503, 507 n. 2 (Tex. App.-Dallas 2007, no pet. h.). Consequently, we consider the motion overruled by operation of law. Tex.R. Civ. P. 329b(c).

■ In his fifth issue, Nelson argues the trial court did not strike his answer and erred by entering a final judgment against him without first affording him a trial on the merits. Appellees respond that Nelson is advancing a "hyper-technical and literalistic 'gotcha' argument against the money judgment." They argue that, given the findings contained in the judgment, we should read the judgment to impose sanctions against Nelson because they "prayed for the striking of all Appellants' pleadings, and this is precisely the relief that the trial court granted." We disagree with appellees.

We have reviewed the two motions that the trial court considered when rendering its final judgment, and neither motion contains any language to support appellees' assertion. The first motion was directed solely at CCC's failure to obtain new counsel as ordered by the trial court; there was no allegation that Nelson engaged in any misconduct. While the supplemental motion asserted that both CCC and Nelson failed to appear at mediation, the motion did not request that the trial court strike Nelson's pleadings. Rather, it requested the court to "[e]nter an order striking CCC's pleadings and dismissing with prejudice all of CCC's claims against the Britt Defendants."

■ Regardless, the factual recitations or reasons preceding the decretal portion of a judgment form no part of the judgment itself. *Alcantar v. Okla. Nat'l Bank,* 47 S.W.3d 815, 823 (Tex.App.-Fort Worth 2001, no pet.). Moreover, where there appears to be a discrepancy between the judgment's recital and decretal paragraphs, a trial court's recitals, which precede the decretal portions of the judgment, do not determine the rights and interests of the parties. *Id.* Rather, the decretal provisions in the judgment control. *Id.*

Although the judgment contained recitations relating to Nelson and sanctions, the decretal portion of the judgment provided as follows: "**IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED** that CCC's pleadings are hereby stricken as to the Britt Defendants and all of CCC's claims against the Britt Defendants are hereby dismissed with prejudice." This decretal language controls, and the judgment did not strike Nelson's pleading.

■ Appellees next argue the issue is "moot" because "there was never any 'Nelson answer' to strike." Again, we disagree. When a counterclaim is served upon a party who has made an appearance in the action, the party so served, in the absence of a responsive pleading, shall be deemed to have pleaded a general denial of the counterclaim. TEX.R. CIV. P. 92. Appellees filed a counterclaim against Nelson for breach of contract, unjust enrichment, and declaratory judgment, and Nelson had appeared in the case. Consequently, he was considered to have pleaded a general denial.

■■ Having determined that Nelson pleaded a general denial and the trial court did not strike his pleading, we now consider the judgment against him for actual damages, attorney's fees, and costs. If a party files a general denial in the trial court, that pleading puts a plaintiff to his or her proof on all issues. *Estrada v. Dillon,* 44 S.W.3d 558, 562 (Tex.2001). There is nothing in this record to reflect that the trial court conducted a trial on the merits or that appellees put on any proof regarding their claims against Nelson. Rather, the record establishes that the hearing was to determine sanctions against CCC. Because there is no basis for Nelson's liability, we conclude the trial court erred in awarding a judgment against him for damages, attorney's fees, and costs.

We sustain the fifth issue and reverse the trial court's judgment as to Nelson.

■ In contrast to Nelson, the trial court did impose death penalty sanctions against CCC by striking its answer and affirmative claims and rendering judgment against it. In its second issue, CCC argues the failure to make a record of this hearing was reversible error given that evidence was presented and CCC was absent. Specifically, CCC argues there is no evidence to show that the trial court considered lesser sanctions or that the alleged misconduct significantly interfered with the trial court's legitimate exercise of a traditional core function. Moreover, CCC asserts there is no evidence of liability and damages to support the judgment. As support for its position, CCC primarily relies on the law that has developed in default judgment cases.

■ For example, post-answer default judgments cannot be entered on the pleadings; rather, the plaintiff must offer evidence and prove his case as in a judgment on trial. *Stoner v. Thompson*, 578 S.W.2d 679, 682 (Tex.1979); *Sharif v. Par Tech, Inc.*, 135 S.W.3d 869, 873 (Tex.App.-Houston [1st Dist.] 2004, no pet.). "If the judgment is rendered after presentation of evidence to the court in the absence of the appellant and his attorney, the failure to have the court reporter present to make a record constitutes reversible error."

*Sharif*, 135 S.W.3d at 873 (quoting *Chase Bank v. Harris County Water Control & Improvement Dist.*, 36 S.W.3d 654, 655 (Tex.App.-Houston [1st Dist.] 2000, no pet.)). Such error is not harmless because, without a reporter's record, the reviewing court is unable to determine if sufficient evidence was presented to support the judgment. *Sharif*, 135 S.W.3d at 873; *Chase Bank*, 36 S.W.3d at 655–56.

■ Similarly, in the case of a no-answer default judgment, if the claim is unliquidated, the court must hear evidence on damages. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex.1992); *Argyle Mechanical, Inc. v. Unigus Steel*, 156 S.W.3d 685, 687 (Tex.App.-Dallas 2005, no pet); *Morgan Express, Inc. v. Elizabeth–Perkins, Inc.*, 525 S.W.2d 312, 315 (Tex. Civ.App.-Dallas 1975, writ ref'd). If an appellant exercises due diligence and through no fault of his own is unable to obtain a record of the evidence, a new trial may be required in order to preserve his right to appellate review. *Morgan Express*, 525 S.W.2d at 315 (citing *Robinson v. Robinson*, 487 S.W.2d 713, 715 (Tex. 1972)).

Here, the trial court held a case-dispositive hearing. No record was made. Appellees do not dispute the hearing was evidentiary in nature.[2] At the conclusion of the hearing, the trial court imposed the

2. In fact, in his affidavit attached to appellees' response to the motion for new trial, appellees' counsel avers that, at the hearing, (1) Nelson "informed the Court of his alleged 'attempts' to obtain counsel for his company" and that Nelson's wife "addressed the Court and claimed that Nelson was 'not well' and was 'mentally ill' " and had not been able to obtain counsel for CCC; (2) he asked the trial court to take judicial notice of its file, including the sworn deposition of Gary Britt to show that appellees had paid $164,000 to CCC and/or Nelson under the settlement agreement; and (3) he "personally stated" that appellees had incurred attorney's fees in excess of $10,000 and that the fees were "reasonable and necessary." Moreover, the trial court's judgment stated that, in ruling on the motion, it considered "any evidence presented." Finally, we note that while our record does contain an exhibit to the sanctions motion showing that CCC did not attend the scheduled mediation and it is undisputed that CCC did not hire counsel by the date ordered by the trial court, our record does not contain any of the evidence suggested by counsel's affidavit. Likewise, we have no way of knowing what other evidence was presented.

most stringent sanction available, thereby preventing CCC from prosecuting its own claims and defending the claims asserted against it. Thereafter, the trial court awarded actual damages, attorney's fees, and costs against CCC. Through no fault of its own, CCC is unable to obtain a record of this hearing.

On appellate review, our obligation is to determine whether the trial court abused its discretion in imposing the sanctions it did. *See Cire v. Cummings,* 134 S.W.3d 835, 839 (Tex.2004). That task necessarily involves a review of the evidence upon which the trial court exercised its discretion, recognizing such discretion is limited by the standards set out in *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913 (Tex.1991) and its progeny. *See Wal–Mart Stores, Inc. v. Butler,* 41 S.W.3d 816, 817–19 (Tex.App.-Dallas 2001, no pet.) (applying *Trans-American* standard to death penalty sanctions imposed for violating pretrial order).

Without a reporter's record of the evidence presented at the hearing that resulted in the sanctions, we are unable to perform any meaningful examination into whether the trial court followed the mandates of *TransAmerican* before deciding this was one of those "exceptional cases" warranting death penalty sanctions. *See Cire,* 134 S.W.3d at 840–41 (explaining that court must first decide whether facts make it "exceptional" case where death penalty sanctions are "clearly justified" and it is "fully apparent that no lesser sanctions would promote compliance with rules"). We are unable to determine whether the trial court considered lesser sanctions, or if it did, the rationale behind a determination that lesser sanctions would not have been effective. Additionally, we are unable to review whether the alleged misconduct significantly interfered with the trial court's legitimate exercise of a traditional core function. *See Dallas County Constable Pct. 5 v. KingVision Pay–Per–View, Ltd.,* 219 S.W.3d 602, 610 (Tex.App.-Dallas 2007, no pet.) (stating that trial court has inherent power to sanction to extent necessary to "deter, alleviate, and counteract bad faith abuse of the judicial process, such as any significant interference with the court's administration of its court functions").

We can discern no logical reason to treat a death penalty sanctions hearing that results in a default judgment any differently than a default judgment hearing itself. In other words, if evidence is presented at a hearing at which death penalty sanctions are imposed and the sanctioned party is absent, a record must be made. Whether the burden falls upon the trial court or the party seeking the sanctions is not pertinent to our disposition. The fact is the burden is not upon the absent party, and, without a record of the evidence in this case, we must reverse the death penalty sanctions as well as the judgment predicated on those sanctions.

In reaching this conclusion, we are unpersuaded by appellees' argument that the lack of a record is both "irrelevant and harmless." Appellees argue that Nelson was present at the hearing and could have requested a record but did not. They further argue that "to the extent CCC had arguments to make or evidence to present at the hearing, Nelson was in a position to do so" and that it is a "legal fiction that CCC did not participate at the hearing."

While Nelson is the president of CCC, Nelson and CCC are separate and distinct entities. A corporation can act only through its agents. *Electronic Data Sys. Corp. v. Tyson,* 862 S.W.2d 728, 737 (Tex.App.-Dallas 1993, orig. proceeding). In litigation, only a licensed attorney can appear and represent a corporation. *Id.* Consequently, Nelson could not represent

CCC at the hearing and his presence did not protect CCC's rights or interests. We sustain the second issue. Our disposition of issues one and five makes it unnecessary to address any other issues. *See* TEX.R.APP. P. 47.1.

We reverse the trial court's judgment and remand this case to the trial court for further proceedings consistent with this opinion.