

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| ZIMMERMAN TRUCK LINES, INC. and CHAD FRYMIRE, | § | 08-17-00131-CV |
| Appellants, | § | Appeal from the |
| v. | § | County Court at Law No. Three |
| KATRINA PASTRAN, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 2012DCV04303) |

## O P I N I O N

Appellants Zimmerman Truck Lines, Inc. ("Zimmerman") and Chad Frymire ("Frymire") appeal from an adverse judgment following a jury trial in a personal injury suit brought by Appellee Katrina Pastran ("Pastran"). Appellants, whom we will refer to collectively as "Zimmerman," assert error in the denial of their motion for new trial and motion for judgment notwithstanding the verdict. We affirm.

## BACKGROUND

Pastran was injured in a collision between the car she was driving and an 18-wheeler driven by Frymire in the course and scope of his employment with Zimmerman. The accident occurred in a turn-around lane when Pastran's car became wedged underneath the trailer portion of the 18-wheeler. The primary factual issues concerned whether Pastran or Frymire entered the turnaround

lane first and whether Frymire made an improper turn into that lane. The facts relating to these issues are set out in detail below in conjunction with Zimmerman's legal sufficiency challenge to the jury's finding that Frymire was wholly at fault. Similarly, the facts relating to Pastran's damages are set out below in conjunction with Zimmerman's legal sufficiency challenges to the jury's damage awards.

## ISSUES

Zimmerman asserts numerous issues on appeal, grouped into two broad categories (1) issues relating to the denial of its motion for new trial, and (2) issues relating to the denial of its motion for judgment notwithstanding the verdict.

Under the first category of issues, Zimmerman contends that the trial court abused its discretion by denying its motion for new trial because (1) Pastran referred in opening statements to an inadmissible citation issued to Frymire after the accident; (2) the trial court impermissibly instructed Pastran to amend her pleadings to allege gross negligence; (3) Pastran failed to demonstrate due diligence in serving Frymire with process; and (4) the trial court allowed Pastran to call Geoffrey Hosband, Zimmerman's corporate representative and safety director, as an expert even though he was not designated as an expert witness.

Under the second category of issues, Zimmerman contends that the trial court erred by denying its motion for judgment notwithstanding the verdict because the evidence is legally insufficient to support both the jury's finding that Pastran was not at fault for the accident and its assessment of her damages.

In addition to responding to these issues on their merits, Pastran contends that, in several instances, Zimmerman failed to preserve error for review and that the asserted errors, even if meritorious, are harmless.

## STANDARD OF REVIEW

### *Motion for new trial*

"Denial of a motion for new trial is reviewed for abuse of discretion." *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010). The test for abuse of discretion is whether the court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). "Another way of stating the test is whether the act was arbitrary or unreasonable." *Id.* at 242.

### *Judgment notwithstanding the verdict*

The denial of a motion for judgment notwithstanding the verdict is reviewed under a legal sufficiency standard. *Moore Freight Servs., Inc. v. Munoz*, 545 S.W.3d 85, 96 (Tex.App.—El Paso 2017, pet. denied). "A party challenging the legal sufficiency of an adverse finding on an issue upon which it did not have the burden of proof must demonstrate that no evidence supports the finding." *Id.* at 96. But "[a] party challenging the legal sufficiency of an adverse finding on an issue on which that party had the burden of proof at trial must demonstrate that the evidence conclusively established all vital facts in support of the issue, as a matter of law." *Nottingham Manor Owners Ass'n v. El Paso Elec. Co.*, 260 S.W.3d 186, 192 (Tex.App.—El Paso 2008, no pet.).

The reviewing court first examines the record for evidence supporting the challenged finding, "crediting favorable evidence, if a reasonable jury could, and disregarding contrary evidence, unless a reasonable jury could not." *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005)). If more than a scintilla of evidence supports the jury's finding, denial of the motion for judgment notwithstanding the verdict will be upheld. *Id.* If, however, there is no

evidence to support the finding, then the court examines the entire record to determine whether the contrary proposition is conclusively established. *Id.*

## DISCUSSION

### *Legal sufficiency of the evidence supporting the jury's assessment of liability*

In its fifth issue, Zimmerman asserts that the trial court erred by denying its motion for judgment notwithstanding the verdict because the evidence is legally insufficient to support the jury's finding that Pastran bore no responsibility for the accident. It is expedient to address this issue first because it is the basis for Zimmerman's assertion of harm relating to many of its other issues on appeal. Zimmerman argues that the finding that Pastran was not at fault demonstrates that the jury ignored evidence conclusively establishing her fault. It further argues that the jury ignored this evidence because of other errors committed by the trial court. The threshold question, then, is whether the evidence conclusively establishes that Pastran was at least partially at fault for the accident. *See Austin v. Kroger Texas, L.P.*, 465 S.W.3d 193, 210 (Tex. 2015)(whether plaintiff is proportionately responsible is a defensive issue on which defendant bears the burden of proof); *Nottingham Manor*, 260 S.W.3d at 192 (legal sufficiency challenge to issue on which defendant bears burden of proof requires conclusive proof of issue).

Pastran was injured when the car she was driving became wedged under an 18-wheeler driven by Frymire in the course and scope of his employment with Zimmerman. The parties offered conflicting versions of how the accident occurred and, thus, who was at fault. Pastran's version is that she was in a turnaround lane when Frymire, who was in the next lane over, suddenly turned his truck into the turnaround lane, colliding with her car. Zimmerman's version is that Frymire was already fully in the turnaround lane when Pastran tried to squeeze her car past his truck, causing the collision.

4

The accident occurred in a turnaround lane at the intersection of North Desert and Transmountain. The area is illustrated by this image contained in Plaintiff's Exhibit 1:



Pastran testified that she had exited IH-10 onto North Desert and was traveling in the left-hand lane. At that point, the road had only four lanes. Frymire's 18-wheeler was traveling in the same lane, in front of Pastran's car. According to Pastran, Pastran moved into the turnaround lane as soon as it opened up to her left; the truck remained in the lane to her right, which was designated as a left-turn-only lane. The truck then suddenly and unexpectedly turned into Pastran's lane, crossing a solid white line as it did so. Pastran expressly denied that the truck was in the turnaround lane first and that she tried to squeeze past it. She further testified that she braked and turned to her left but could not avoid the collision. Pastran's car ended up under the trailer portion of the 18-wheeler, where it was crushed and dragged.

Lisa Rascon, an eyewitness, testified by deposition that Pastran was in the turnaround lane and that the truck turned into that lane from the left-turn-only lane. She did not, however, believe it was wrong for the truck to turn from that lane. Rascon also testified that the truck was already

in the turnaround lane and that she believed the collision would not have occurred if Pastran had not moved her car forward.

Another eyewitness, Norma Ito, testified, "What I saw, the small vehicle was also on the turn-around left lane, almost in the back of the 18-wheeler. The 18-wheeler was already inside the turn-around left lane, the tractor; and the trailer was making the left turn." On cross-examination, Ito acknowledged that she did not notice the truck until it was already partially in the turnaround lane; she did not see how it entered that lane or where it started its turn.

Frymire, the driver of the 18-wheeler, did not testify and was apparently not present at trial.

The jury was asked whether the negligence of either Frymire or Pastran proximately caused the accident. It was instructed that the conduct of a person confronted with an emergency, not caused by her own negligence, is not negligence if, after the emergency arises, she acts as a reasonable person would in the circumstances. It was also instructed that a vehicle operator making a left-hand turn is required to approach the intersection from "the extreme left-hand lane lawfully available," and that turning from an improper lane constitutes negligence.

The jury found that Frymire was negligent and Pastran was not. Although it was unnecessary to do so because of its answers to the liability question, the jury apportioned 100 percent responsibility to Frymire.

Zimmerman does not dispute the jury's finding that Frymire's negligence proximately caused the accident. Rather, it disputes the jury's failure to find that Pastran was also at fault. Because Zimmerman bore the burden of proof on this issue, it must show on appeal that the evidence conclusively established Pastran's fault. *Nottingham Manor*, 260 S.W.3d at 192. It argues that it sustained this burden through the testimony of Rascon and Ito, as well as through photographs of the scene showing the trailer of the 18-wheeler on top of Pastran's car.

6

It is well-settled that the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Munoz*, 545 S.W.3d at 96. It is within the province of the jury to believe one witness and disbelieve another, and this Court must assume that the jury decided all credibility questions in favor of the verdict, if reasonable jurors could do so. *Id.*

Rascon's and Ito's version of the accident and their assessment of whether Pastran could have avoided it was inconsistent, in some respects, with Pastran's testimony. Nevertheless, the jury was entitled to believe Pastran and disbelieve Rascon and Ito. *See id.* Additionally, the post-accident photographs on which Zimmerman relies do not refute Pastran's account of the accident. Those photographs show only where the vehicles ended up. They do not show which vehicle entered the turnaround lane first, whether the truck made an abrupt turn into that lane from the left-turn lane, or whether Pastran could have avoided the collision.

Pastran's testimony, particularly in light of the instructions given to the jury, supports the jury's verdict and precludes any conclusion that the evidence conclusively establishes that Pastran was at fault. The trial court therefore correctly denied Zimmerman's motion for judgment notwithstanding the verdict on liability.

Zimmerman's fifth issue is overruled.

### *Reference in opening statements to a traffic citation*

Prior to trial, Zimmerman filed a supplemental motion in limine seeking to exclude evidence that Frymire had received a traffic citation relating to the accident for making an improper turn. At a hearing on that motion, Pastran acknowledged that the citation was not admissible to prove Frymire's negligence, but asserted that it was admissible on the issue of Zimmerman's compliance with Federal Motor Carrier Safety Regulations. Pastran argued that if a truck driver is involved in an accident in which either driver is taken away by ambulance or a car is towed from

7

the scene, and a citation is issued to the truck driver, the company is required to have its driver take a drug and alcohol test within two hours. If the test does not occur, the company must maintain a record explaining why. These duties are not triggered, however, unless a citation is issued.

Zimmerman sought to exclude evidence of the citation on the ground that it was unduly prejudicial. It argued that the basis for the citation—making a wide left turn—was the exact issue to be presented to the jury and that, if the citation were admitted, the jury would accept it as proof of Frymire's negligence. Zimmerman also argued that the citation should be excluded on the ground that whether Zimmerman complied with the federal regulations was irrelevant because the fact that Frymire was not tested did not cause the accident. After extended discussion, the trial court denied the limine request.

In opening statements to the jury, Pastran's attorney described the intersection where the accident occurred and stated that Frymire suddenly made a left turn from the turn lane into the turnaround lane. Counsel then stated, "Now, after the police came and investigated, Chad Frymire was issued a citation." Zimmerman immediately objected and asked to approach the bench, where the following exchange occurred:

> MR. LARA [counsel for Zimmerman]: Your Honor, that's an issue that was going to be decided beforehand. He's now brought it up in opening argument. We were going to . . . We were about to approach on that, and we were supposed to do that outside the presence of the jury, Your Honor.
>
> MR. LANGFORD [counsel for Pastran]: Judge, I thought you already ruled that the citation came in.
>
> MR. LARA: At this point, Your Honor, they've already heard my client has been cited. Your Honor, at this point I have no choice but to ask for a mistrial.
>
> THE COURT: All right. Overruled.
>
> MR. LARA: But—
>
> THE COURT: Overruled.

8

MR. LARA: But may I ask an instruction disregarding that statement, Your Honor?

THE COURT: No, sir. Overruled.

The following then transpired before the jury:

MR. LANGFORD: Chad Frymire was issued a traffic citation for making a turn from the wrong lane. Because of the circumstances of the wreck and the fact that he's driving a commercial vehicle, he was required to submit to an alcohol test and a drug test within a specified time period.

MR. LARA: Objection, Your Honor. That was the same. That's the same objection that we were discussing.

THE COURT: Sustained. Let's not get into that. Okay?

MR. LANGFORD: Okay. I'll skip that part.

Zimmerman again moved for a mistrial and again argued that the citation was inadmissible because whether Frymire was tested for drugs or alcohol after the accident was irrelevant and immaterial. The trial court clarified that it had denied Zimmerman's motion in limine concerning the citation, but that it then had second thoughts and "excluded it in the [police] report." The court instructed that there would not be any mention of a citation unless Zimmerman opened the door. The court denied Zimmerman's request for a mistrial.

Zimmerman then asked that the jury be instructed to disregard the reference to the citation made in opening statements. The court initially refused, citing its concern that such an instruction would draw attention to the citation. Pastran, while agreeing with the court's reasoning, stated that if Zimmerman wanted the instruction to disregard, perhaps the court should give it. The court asked Zimmerman if it wanted the court "to instruct [the jury] to disregard any mention of a citation and not to consider it," and Zimmerman responded in the affirmative.

In accordance with Zimmerman's request, the court instructed the jury: "There was mention yesterday about a citation. The Court is instructing you not to consider it as evidence,

zero evidence, no evidence, of any citation. Do you understand? . . . You cannot consider it. All right?" The jury indicated that it understood this instruction.

A party asserting improper jury argument must establish "(1) an error (2) that was not invited or provoked, (3) that was preserved by the proper trial predicate, such as an objection, a motion to instruct, or a motion for mistrial, and (4) was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge." *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839 (Tex. 1979); *accord Porter v. Heritage Operating, L.P.*, 569 S.W.3d 686, 726–27 (Tex.App.—El Paso 2018, pet. filed). An improper jury argument is incurable only in those rare instances where the argument "by its nature, degree and extent constituted reversibly harmful error." *Standard Fire*, 584 S.W.2d at 839. Considering all of the evidence and the record of the case as a whole, the complaining party "must show that the probability that the improper argument caused harm is greater than the probability that the verdict was grounded on the proper proceedings and evidence." *Id.* at 840; *accord Porter*, 569 S.W.3d at 727.

Pastran contends that Zimmerman did not preserve error by lodging a proper, timely objection to the reference to the citation. She also contends that the trial court did not abuse its discretion by permitting the reference. We need not address these contentions, though, because the issue of harm is dispositive.

Zimmerman argues that, despite the court's instruction to disregard, the reference in opening statements to the citation prejudiced the jury and caused an improper judgment to be entered. But, in the absence of evidence to the contrary, we "must assume that a jury properly followed the trial court's instructions." *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.*, 642 S.W.2d 160, 167 (Tex. 1982); *see Household Credit Servs., Inc. v. Driscol*, 989 S.W.2d 72, 96 (Tex.App.—El Paso 1998, pet. denied).

Zimmerman does not identify any evidence showing that the jury did not obey the court's instruction to disregard. Instead, it speculates that the jury must have ignored that instruction because it purportedly ignored substantial evidence of Pastran's fault. In essence, Zimmerman contends that the citation reference was incurable. We disagree.

As discussed above, the record as a whole demonstrates that there is ample evidence supporting the jury's finding that Frymire was at fault and Pastran was not. Pastran testified that she was already in the turnaround lane when Frymire abruptly turned into that lane from the left-turn lane. The testimony of Rascon and Ito, on which Zimmerman relies, does not conclusively establish that Pastran was at fault or negate Pastran's own version of the events. To the extent Rascon's and Ito's testimony contradicted Pastran's, it was within the province of the jury to resolve those inconsistencies by weighing the evidence and assessing the credibility of the witnesses. *See Munoz*, 545 S.W.3d at 96.

Again, the jury was instructed to disregard the citation reference, and we must assume that it followed that instruction. *See Brookhollow*, 642 S.W.2d at 167. Further, the nature, degree and extent of the citation reference is not such as to constitute incurable argument. *See Standard Fire*, 584 S.W.2d at 839. The first mention stated only that Frymire was issued a citation. The second mention, which was made only after the court overruled Zimmerman's objection to the first, added the fact that the citation was for making a turn from the wrong lane. Pastran's counsel immediately moved on to another subject when Zimmerman's objection to this reference was sustained. There was no extended discussion of the citation or the reasons for its issuance, nor was the nature of the reference inflammatory or calculated to draw undue attention to the citation. In short, "the argument was not so severe or prolonged as to amount to reversible error." *Id.* at 840.

11

Zimmerman has not sustained its burden to show that the probability that the citation reference caused harm is greater than the probability that the verdict was grounded on the proper proceedings and evidence. *See id.*; *Porter*, 569 S.W.3d at 727. For this reason, even if we were to conclude that the citation reference constituted error, that error is harmless. *See* TEX.R.APP.P. 44.1. Zimmerman's first issue is overruled.

<u>*Amendment of pleadings to allege gross negligence*</u>

In its second issue, Zimmerman complains that the trial court abused its discretion by instructing Pastran to amend her pleadings to allege gross negligence against Zimmerman. The record, however, does not support Zimmerman's characterization of what occurred.

Zimmerman stipulated that Frymire was acting in the course and scope of his employment at the time of the accident. Based on that stipulation, Zimmerman filed a motion to quash the deposition of its corporate representative on issues including negligent hiring, negligent entrustment, negligent supervision, and negligent training. Zimmerman supported its motion with the opinion in *Arrington's Estate v. Fields*, 578 S.W.2d 173 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.), in which the court states, "Where only ordinary negligence is alleged, the case law supports appellants' contention that negligent hiring and respondeat superior are mutually exclusive modes of recovery." *Id.* at 178.

Pastran informed the court at the hearing on Zimmerman's motion that she had not yet alleged gross negligence against Zimmerman but might do so after obtaining discovery on the issue. The court responded that discovery could not be used as a fishing expedition to find information, but "if you plead it, you're entitled to get the information." Zimmerman agreed that Pastran was entitled to get information on the disputed issues if she pleaded gross negligence on the part of the employer. Zimmerman further agreed that Pastran could amend her pleadings and

later, depending on what discovery revealed, amend again to drop the gross negligence claim.

The court then addressed counsel for Pastran: "Okay. So why don't you do that, Mr. Langford?" The record does not reflect that Pastran made any response, nor does it reflect that Zimmerman made any objection to the court's question. Indeed, there was no further discussion of the subject and the hearing ended. Approximately ten days later, Pastran amended her petition to allege gross negligence against Zimmerman.

To preserve error for appellate review, a party must make a timely request, objection, or motion stating the grounds with sufficient specificity to make the trial court aware of the complaint. TEX.R.APP.P. 33.1. The record does not contain any such timely request, objection, or motion challenging the propriety of the trial court's question to Pastran. Rather, the complaint was raised for the first time in Zimmerman's motion for new trial, almost two years later. The issue is not preserved for review. *See id.*

In addition, we do not read the record as supporting the characterization that the trial court "instructed" Pastran to amend her pleadings to allege gross negligence. The court was clearly making an inquiry, not issuing instructions. Indeed, it appears that Zimmerman recognized as much at the time as it did not make any objection, or even voice any concern, about the court's question. It also did not object to, or move to strike, Pastran's amended petition based on any asserted "instruction" by the court.

The record also does not support the contention that Pastran amended her pleadings because the court had somehow "instructed" her to. Rather, the record demonstrates that Pastran was already considering a gross negligence claim against Zimmerman. In fact, that was the reason Pastran gave for seeking to depose Zimmerman's corporate representative on issues concerning

13

negligent hiring, entrustment, supervision, and training.  She was simply putting the discovery cart before the pleading horse, which the trial court correctly determined was improper.

Zimmerman did not preserve for review any error in the court asking Pastran, "Why don't you [amend your petition]?"  In addition, it has not demonstrated that posing that question constituted an abuse of discretion.  Zimmerman's second issue is overruled.

### *Due diligence in obtaining service on Frymire*

Zimmerman next contends that the trial court abused its discretion by entering judgment against Frymire because Pastran did not exercise due diligence in having him served with process.  Frymire argues that he is a nonresident subject to substituted service of process through the chairman of the Texas Transportation Commission ("TTC").  *See* TEX.CIV.PRAC.&REM.CODE ANN. §17.062(a)(TTC chairman is agent for service of process on non-Texas resident who is a defendant in a lawsuit arising from a motor vehicle accident).  Frymire asserts that limitations expired in July 2013, he was never personally served, and Pastran did not serve the TTC chairman until August 2016.

Limitations is an affirmative defense.  TEX.R.CIV.P. 94; *Archer v. Tregellas*, 566 S.W.3d 281, 288 (Tex. 2018).  A defendant asserting limitations has the burden of establishing that defense.  *Harrell v. Alvarez*, 46 S.W.3d 483, 485 (Tex.App.—El Paso 2001, no pet.).  Once the defendant shows that he was not served until after the limitations period had expired, then the burden shifts to the plaintiff to show that she used due diligence in effectuating service.  *Id.* at 485-86.

Frymire raised the defense of limitations by filing a Plea in Bar.[1]  But the record does not

---

[1] It does not appear from the record that Frymire has ever been personally notified of this lawsuit against him.  The Plea in Bar, itself, states that the attorney filing it on Frymire's behalf does not know whether Frymire "has in fact received notice of suit."  It is not clear to us, then, how counsel has authority to file any pleading, or this appeal, on Frymire's behalf.

reveal that Frymire ever brought this plea to the trial court's attention, obtained any ruling from the court, introduced evidence on the matter at trial, or asked that the issue of limitations be submitted to the jury. For this reason, the burden of proof did not shift to Pastran to show due diligence. *See id.* The trial court did not abuse its discretion by denying the motion for new trial based on Frymire's defense of limitations.

In addition, the issue is moot because the trial court did not, in fact, enter judgment against Frymire. Judgments contain two types of clauses: recital and decretal. *Nelson v. Vernco Constr., Inc.*, 566 S.W.3d 716, 739 n.8 (Tex.App.—El Paso 2018, judgment set aside, opinion not vacated, pet. filed)(citing *Alcantar v. Okla. Nat'l Bank*, 47 S.W.3d 815, 823 (Tex.App.—Fort Worth 2001, no writ)); *see Nelson v. Britt*, 241 S.W.3d 672, 676 (Tex.App.—Dallas 2007, no pet.). "The factual recitations or reasons preceding the decretal portion of a judgment form no part of the judgment itself." *Alcantar*, 47 S.W.3d at 823; *accord Nelson*, 566 S.W.3d at 740; *Britt*, 241 S.W.3d at 676. If there appears to be a discrepancy between the judgment's recitals and its decretal paragraphs, the decretal provisions control. *Nelson*, 566 S.W.3d at 740; *Britt*, 241 S.W.3d at 676; *Alcantar*, 47 S.W.3d at 823.

The judgment here recites that the court finds, based on the jury verdict, that Pastran is entitled to recover from Zimmerman and Frymire. But the decretal portion of the judgment orders that Pastran recover only against Zimmerman:

> IT IS THEREFORE ORDERED, ADJUDGED and DECREED that Plaintiff, KATRINA PASTRAN recover judgment *from Defendant, ZIMMERMAN TRUCK LINES, INC.*, in the sum of $122,243.90 together with postjudgment interest on the total from the date of judgment at the rate of 5% per annum compounded annually.
>
> It Is Further ORDERED, ADJUDGED and DECREED that all costs be assessed against *the* Defendant. [Emphasis added].

15

Because the decretal provision controls, we conclude that the trial court entered judgment in favor of Pastran against Zimmerman, only, and not Frymire. *See Nelson*, 566 S.W.3d at 740; *Britt*, 241 S.W.3d at 676; *Alcantar*, 47 S.W.3d at 823.

Zimmerman's third issue is overruled.

### *Expert testimony by Zimmerman's corporate representative*

In its fourth issue on appeal, Zimmerman contends that the trial court abused its discretion by allowing Geoffrey Hosband, Zimmerman's corporate representative and safety director, to testify as an expert even though he was not previously designated as such.

The issue of Hosband testifying as an expert first arose when Hosband was asked by Pastran whether an 18-wheeler rear-ending a car would cause more damage than would a passenger vehicle, traveling at the same speed, rear-ending a car. Zimmerman objected that it had not been established that Hosband was an expert witness. Pastran responded that she should be permitted to seek Hosband's lay opinion based on his experience as Zimmerman's safety director. The trial court agreed, stating, "Yes. Go ahead."

The issue arose again when Pastran asked Hosband about the actual accident scene. Zimmerman objected that Hosband could not give any expert opinion "as to what happened" because he had not visited the scene. The court ruled that Pastran could ask the question if she laid a proper foundation. Pastran then questioned Hosband concerning this duties as safety director, including the duty to investigate accidents. Pastran established that Hosband had reviewed photographs of the accident scene in this case and had made a determination concerning whether a truck driver could safely turn from the left-turn lane into the turnaround lane.

At this point, Pastran asked Hosband, "Would you agree with me that any truck driver in an 18-wheeler making a left turn in that turn-around lane should stay completely in the turn-around

lane?" Zimmerman first objected based on speculation. After some discussion between counsel and the court, it also objected that the question required expert testimony. The trial court responded that, although neither party had designated him as an expert, the court considered Hosband an expert based on his experience. After a brief recess, Pastran then offered Hosband as an expert on truck driving. When asked whether there was any objection, Zimmerman responded, "Truck driving, no objection, your honor."

Zimmerman now contends that the court improperly permitted Hosband to testify as an expert because he had not been designated by either party. Zimmerman has not preserved this issue for review. His trial objections were not based on any failure to designate Hosband as an expert witness. Rather, they were based on the assertion that Hosband was not, in fact, an expert on the matters inquired about. The fact that Hosband had not been designated as an expert witness was raised by the trial court, not Pastran. And, when given the opportunity to object to allowing Hosband to testify as an expert despite this lack of designation, Zimmerman affirmatively stated that it had no objection. Any error in allowing that expert testimony is waived. *See* TEX.R.APP.P. 33.1 (requiring timely objection to preserve error); *Clark v. Trailways, Inc*., 774 S.W.2d 644, 647 (Tex. 1989)(failure to object to undisclosed witness waives error).

Zimmerman's fourth issue is overruled.

### *Legal sufficiency of the evidence of damages*

In its final issue on appeal, Zimmerman asserts that the evidence is legally insufficient to support the jury's damage findings relating to past medical expenses, past and future pain, past and future physical impairment, and the cost of repair and loss of use of Pastran's car. We address each element in turn.

### *Past medical expenses*

17

The jury awarded Pastran $23,133.40 for her past medical expenses. Zimmerman does not contest that Pastran presented evidence of these expenses. Rather, it contends that there is no evidence that these expenses were reasonable and necessary. In response, Pastran asserts that the issue should be overruled because (1) the reasonableness and necessity of her medical bills was uncontroverted, and (2) the jury charge did not require a finding that her past medical expenses were reasonable and necessary.

Section 18.001 of the Texas Civil Practice and Remedies Code provides that, in the absence of a controverting affidavit, "an affidavit that the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service was necessary is sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary." TEX.CIV.PRAC.&REM.CODE ANN. § 18.001(b).

Pastran argues that the reasonableness and necessity of her medical bills was uncontroverted because Zimmerman did not file a controverting affidavit. *See id.* But the fact that Zimmerman did not file such an affidavit did not relieve Pastran of the responsibility of having her own affidavits admitted into evidence, as contemplated by the statute. *See id.* (affidavit is sufficient evidence). Section 18.001 "is purely procedural, providing for the use of affidavits to streamline *proof* of the reasonableness and necessity of medical expenses." [Emphasis added]. *Haygood v. De Escabedo*, 356 S.W.3d 390, 397 (Tex. 2011). In other words, the statute authorizes a particular kind of proof; it does not dispense with the necessity of introducing that proof.

Pastran next argues that Zimmerman's issue fails because the jury was not required to find that her medical bills were reasonable and necessary. The jury was asked to determine "[w]hat sum of money, if paid now in cash, would fairly and reasonably compensate Katrina Pastran for her injuries, if any, that resulted from the occurrence in question[.]" The charge then listed five

categories of damages, one of which was "[m]edical expenses incurred in the past." Zimmerman did not object to the omission of any language limiting the jury's consideration to medical expenses that were reasonable and necessary.

"[I]t is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence when the opposing party fails to object to the charge." *Seger v. Yorkshire Ins. Co., Ltd.*, 503 S.W.3d 388, 407 (Tex. 2016)(quoting *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000)). The Fourteenth Court of Appeals addressed a similar situation in which neither party objected at trial to the omission of a "reasonable and necessary" limitation in the charge and appellant did not assert on appeal that the charge was erroneous. *See United Nat. Ins. Co. v. AMJ Investments, LLC*, 447 S.W.3d 1, 9 (Tex.App.—Houston [14th Dist.] 2014, pet. dism'd). The court concluded, "Because we must measure the sufficiency of the evidence by the charge, the evidence supporting a jury's finding of the costs to repair or replace property is not legally insufficient where the jury was not instructed to find 'the reasonable and necessary' costs." *United Nat. Ins.*, 447 S.W.3d at 9; *see Region XIX Serv. Ctr. v. Banda*, 343 S.W.3d 480, 487 (Tex.App.—El Paso 2011, pet. denied)(measuring sufficiency of the evidence by jury charge that did not limit compensable injury as law would otherwise have required).

We likewise conclude that the evidence of Pastran's past medical expenses is not legally insufficient because the jury was not instructed to find "reasonable and necessary" medical expenses. *See United Nat. Ins.*, 447 S.W.3d at 9; *see also Banda*, 343 S.W.3d at 487. The trial court did not err by denying Zimmerman's motion for judgment notwithstanding the verdict on past medical expenses.

*Past and future pain*

Zimmerman asserts that the trial court erred in denying its motion for judgment notwithstanding the verdict because Pastran did not mitigate her damages for pain. Failure to mitigate damages is an affirmative defense. *Duchene v. Hernandez*, 535 S.W.3d 251, 259–60 (Tex.App.—El Paso 2017, no pet.); *In re Estate of Downing*, 461 S.W.3d 231, 242 n.5 (Tex.App.—El Paso 2015, no pet.). "[T]he standard is that of ordinary care, i.e., what an ordinary prudent person would have done under the same or similar circumstances." *Sorbus, Inc. v. UHW Corp.*, 855 S.W.2d 771, 775 (Tex.App.—El Paso 1993, writ denied).

Zimmerman can prevail on this issue only if the evidence conclusively establishes that Pastran failed to do what an ordinarily prudent person would have done to mitigate her pain. *See Nottingham Manor*, 260 S.W.3d at 192 (party seeking JNOV on issue on which it had burden of proof at trial must show issue was conclusively proved); *Sorbus*, 855 S.W.2d at 775 (ordinary care standard).

Pastran was extracted from her car by the jaws of life. She testified that she experienced neck and back pain and was taken by ambulance to the hospital, where she underwent testing and was given pain medication. Her medical records show that she was diagnosed with a cervical sprain. Pastran also testified that she sought treatment for her pain at a medical clinic, received chiropractic treatment, used ice packs and a heating pad, and continues to take over-the-counter pain medication.

Zimmerman contends that, despite these actions, Pastran did not mitigate her pain damages because, after the accident, she sought treatment for three-foot fractures (unrelated to the accident) but did not seek additional treatment for her neck and back pain at the same time. There is, however, no evidence that the doctor who treated Pastran's foot injuries could have successfully alleviated her neck and back pain. In addition, there is no evidence that an ordinarily prudent

20

person would have sought treatment for neck and back pain from a doctor treating an entirely unrelated injury. We decline to hold as a matter of law that such action is required to mitigate damages.

The record does not conclusively establish that Pastran failed to mitigate her damages. The trial court did not err by denying Zimmerman's motion for judgment notwithstanding the verdict on damages for past and future pain.

### *Past and future impairment*

An award of damages for physical impairment compensates an injured plaintiff for the loss of her former lifestyle. *Telesis/Parkwood Ret. I, Ltd. v. Anderson*, 462 S.W.3d 212, 242 (Tex.App.—El Paso 2015, no pet.). To recover, "[a] plaintiff must produce some evidence showing the tasks or activities she is unable to perform, unless the separate and distinct loss is obvious." *Id.* But a plaintiff is not required to show that she is literally unable to perform an act that she was previously able to perform. *Dodge v. Watts*, 876 S.W.2d 542, 543-44 (Tex.App.—Amarillo 1994, no writ). It is sufficient that attempting to perform the act produces such pain that the plaintiff is effectively prevented from performing it. *Id.*

Pastran testified that, after the accident, she could barely move and needed assistance to get in and out of bed and to care for herself and her child. She was previously very active but even now is sometimes unable to play with her sons. She needs help with housekeeping chores and is sometimes unable to go to work because of the pain.

Zimmerman does not address this evidence, but argues that Pastran is not physically impaired because she was able to seek employment requiring heavy lifting, conceived a child after the accident, and relocated to Colorado. Zimmerman concludes that no reasonable jury could find that Pastran is physically impaired because she is able to live a "fairly regular life."

21

We first note that living a "fairly regular life" is not the relevant standard. Rather, Pastran was required to present evidence of tasks she is no longer able to perform. *See Anderson*, 462 S.W.3d at 242. Her own testimony fulfills this burden. That testimony is not negated by evidence that she had a job that required heavy lifting. In fact, Pastran testified that she was supposed to have been employed as a cashier and, once she was assigned job duties requiring heavy lifting, she had to seek other employment. Finally, we find no significance in the fact that Pastran was able to conceive a child and relocate to another state. Just because a plaintiff is able to engage in some life activities does not mean that her ability to engage in others is not impaired. This is particularly so when, as in this case, there is affirmative evidence of an inability to engage in specific other activities.

The record contains evidence showing that Pastran suffered physical impairment as a result of the accident. The trial court did not err by denying Zimmerman's motion for judgment notwithstanding the verdict on damages for physical impairment.

### *Cost of repair and loss of use*

The jury awarded Pastran $5,000 as the cost of repairing the car involved in the accident and $3,000 for loss of its use. Zimmerman argues that Pastran is not entitled to either award because she did not own the car. It bases this argument on evidence that the car was registered to Pastran's father, Luis Pastran, and that the car was still in Luis Pastran's possession at the time of trial.

"Evidence of the name in which an automobile is registered raises only a presumption of ownership. A presumption is not evidence and vanishes when positive evidence to the contrary is introduced." *Vibbert v. PAR, Inc.*, 224 S.W.3d 317, 321 (Tex.App.—El Paso 2006, no pet.).

Pastran testified that she owned the car at issue. Luis Pastran similarly testified that Pastran owned the car because he gave it to her. He acknowledged that the car has remained at his house since being towed there after the accident, but he reiterated that he had given the car to Pastran.

The testimony of Pastran and her father is "positive evidence to the contrary" of the presumption of ownership raised by the registration in Luis Pastran's name. As a result, that presumption vanished. *See id.* The evidence does not conclusively establish that Luis Pastran, rather than Pastran, owns the car.

Zimmerman next argues that it was entitled to judgment notwithstanding the verdict on cost of repairs and loss of use damages because Pastran never actually had the car repaired.

The Supreme Court has held that, where personal property is only partially destroyed, the owner of that property may recover "the reasonable costs of such replacements and repairs as are necessary to restore the damaged article to its condition immediately prior to the accident." *J & D Towing, LLC v. Am. Alternative Ins. Corp.*, 478 S.W.3d 649, 656 (Tex. 2016). The owner may also recover "loss-of-use damages, such as the pecuniary loss of the use of an automobile damaged in a collision." [Internal quotation marks omitted]. *Id.* The court did not impose any requirement that repairs actually be performed before recovery of those damages may be sought.

This Court has recognized that "the law appears to be settled that upon the introduction of evidence showing a reasonable cost of such replacements and repairs to restore the damaged property to its condition immediately before the damage was done, the owner makes out a prima facie case for recovery." *Nielson v. Okies*, 503 S.W.2d 614, 616 (Tex.Civ.App.—El Paso 1973, no writ). "[W]hether or not [the owner] has, yet, or will in the future, make the repairs of those injuries and damages is not of consequence in arriving at the amount thereof." *Id.*

23

Zimmerman asserts that a different case from this Court holds that a plaintiff cannot recover loss of use damages unless she has actually had the property repaired. *See Texas Farm Bureau Mutual Insurance Co. v. Wilde*, 385 S.W.3d 733 (Tex.App.—El Paso 2012, no pet.), *abrogated in part*, *J & D Towing, LLC v. Am. Alternative Ins. Corp.*, 478 S.W.3d 649 (Tex. 2016). But *Wilde* contains no such limitation. Rather, it states that "[l]oss-of-use damages are permitted where cost-of-repair damages are *sought*." [Emphasis added]. *Id.* at 737. In addition, while *Wilde* did place a different limitation on recovery of loss of use damages, the Supreme Court later abrogated that limitation. *See J & D Towing*, 478 S.W.3d at 656 n.28.

We reject Zimmerman's contention that a party cannot recover damages for cost of repair or loss of use of damaged personal property unless that property has actually been repaired prior to the time the damages are sought. The trial court did not err by denying Zimmerman's motion for judgment notwithstanding the verdict on cost of repair and loss of use damages.

Zimmerman did not establish its entitlement to judgment notwithstanding the verdict on any of its challenges to the jury's damage awards. Its final issue is overruled.

## CONCLUSION

The record does not demonstrate that the trial court abused its discretion by denying Zimmerman's motion for new trial or that it erred by denying Zimmerman's motion for judgment notwithstanding the verdict. Having overruled all of Appellant's issues, the judgment is affirmed.

August 16, 2019

YVONNE T. RODRIUGEZ, Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

24