# NO. 12-20-00054-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| ***ATLAS SURVIVAL SHELTERS, LLC, APPELLANT*** | § | ***APPEAL FROM THE 294TH*** |
| ***V.*** | § | ***JUDICIAL DISTRICT COURT*** |
| ***CLYDE SCOTT AND RISING S COMPANY, LLC, APPELLEES*** | § | ***VAN ZANDT COUNTY, TEXAS*** |

### *MEMORANDUM OPINION*

This is an accelerated interlocutory appeal brought pursuant to the Texas Citizens Participation Act (TCPA).[1]  Atlas Survival Shelters, LLC appeals the denial of its motion to dismiss the libel suit brought by Clyde Scott and Rising S Company, LLC (collectively Scott). In four issues, Atlas contends the trial court erroneously denied its motion to dismiss.  Because we conclude that Scott's suit is exempt from the TCPA, we affirm the trial court's order denying the motion to dismiss.

### BACKGROUND

Scott and Atlas are competitors in the survival shelter industry.  Atlas's owner, Ron Hubbard, posted two videos to Atlas's YouTube channel in April 2019 in which Hubbard made statements about Scott and Rising S Company.  One video, entitled "Texas Man Spends 33 Months in Prison After Buying Shelter From Rising S Bunkers," featured Hubbard interviewing a man who believed his incarceration was a direct result of his interactions with Clyde Scott when he purchased a Rising S shelter.  Another video, entitled "Lady in Minnesota and Her Horrible Bomb Shelter," featured Hubbard touring and critiquing a shelter installed by Rising S.

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001-.011 (West 2020).

Scott sued Atlas for libel and business disparagement based on these two videos. Hubbard posted a third video on June 23, 2019, after Scott filed this suit, entitled "World Expert Visits a Badly Engineered $500,000 Bomb Shelter," in which Hubbard allegedly referred to Scott disparagingly. Atlas answered and moved to dismiss the suit pursuant to the TCPA. Atlas also counterclaimed for libel, slander, business disparagement, negligent misrepresentation, and breach of contract. Scott filed an amended petition adding claims for breach of contract and fraudulent misrepresentation. On August 22, 2019, Scott filed a second amended petition to which it attached additional exhibits. A hearing on the motion to dismiss was held on August 26, 2019. At the conclusion of the hearing, the court did not rule on the motion and stated it was taking the motion under advisement to review the pleadings and evidence, including the videos in question. On October 15, 2019, the court signed an order denying the motion to dismiss. There is nothing in the record explaining why the court did not rule sooner, though he advised the parties at the August 26 hearing he would try to rule on the motion by week's end. Atlas filed its notice of appeal on October 22, 2019.

After Atlas filed its notice of appeal in this court, Scott moved to dismiss the appeal for want of jurisdiction because the notice of appeal was filed more than twenty days after the motion to dismiss was denied by operation of law. Atlas filed a response asserting the October 15 ruling modified the denial of its motion to dismiss pursuant to Rule of Civil Procedure 329b, and the time for appealing runs from the October 15 ruling. This court overruled Scott's motion and set the case for submission.[2]

## JURISDICTION

Before proceeding with the substantive issues in this appeal, we first address Scott's claim this court lacks jurisdiction to hear Atlas's appeal. Our initial inquiry is always whether we have jurisdiction over an appeal. *Laster v. Thomas*, 487 S.W.3d 772, 773 (Tex. App.—Dallas 2016, no pet.) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993)). In its brief, Scott asserts that the trial court lacked authority to issue its October 15 order, and therefore that order is void and unappealable. Scott argues that the TCPA requires the trial court to rule no later than the thirtieth day after the hearing on the motion. Because it did not, the argument continues, the motion was overruled by operation of law on September 25, and

---

[2] On any party's motion, an appellate court may dismiss the appeal if it is subject to dismissal for want of jurisdiction. TEX. R. APP. P. 42.3(a).

any order entered after that date is void. The record is clear that the hearing on Atlas's motion to dismiss was held and concluded on August 26 and that an order denying the motion was rendered on October 15. Scott's argument implicates the question of timeliness of Atlas's notice of appeal.

The applicable version of Section 27.005(a) required the trial court to rule on a TCPA dismissal motion not later than the thirtieth day following the date of the hearing on the motion. Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 960, 962 (amended 2019) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(a)). If the trial court does not issue a timely ruling, the motion is considered to have been denied by operation of law and the moving party may appeal. TEX. CIV. PRAC. & REM. CODE ANN. § 27.008(a).

The TCPA further provides that the appellate court shall expedite an appeal from a trial court order on a motion to dismiss under Section 27.003 or from a trial court's failure to rule on that motion in the time prescribed by Section 27.005. *Id*. at 27.008(b). The rules of appellate procedure provide that, in an accelerated appeal, the notice of appeal must be filed within twenty days after the judgment or order is signed. TEX. R. APP. P. 26.1(b). In appeals from a Section 27.003 motion to dismiss, where there is no order rendered within the thirty-day time period, courts have determined that the twenty-day timeframe to file the notice of appeal begins when the motion is denied by operation of law. *See **Montiel v. Lechin***, No. 01-18-00781-CV, 2019 WL 1186695, at *3 (Tex. App.—Houston [1st Dist.] March 14, 2019, no pet.) (per curiam) (mem. op.); ***Clewis v. Harris Cty.***, No. 14-15-00424-CV, 2015 WL 5935825, at *1 (Tex. App.—Houston [14th Dist.] Oct. 13, 2015, pet. denied) (per curiam) (mem. op.).

Atlas counters that the trial court retained plenary jurisdiction after the September 25 denial of the motion to dismiss by operation of law. Therefore, it argues, the October 15 order is not void and if not void, the notice of appeal filed on October 22 is certainly timely. We first note that the TCPA does not address whether the trial court may rule on a motion to dismiss after it has been denied by operation of law. While Section 27.005(a) requires a timely ruling on a motion to dismiss, it says nothing about a trial court's plenary power outside the statute's thirty-day deadline. *See **In re Panchakarla***, 602 S.W.3d 536, 540 (Tex. 2020). We need not specifically answer whether the trial court retained plenary power as to Atlas's motion to dismiss after it was denied by operation of law, or whether the September 25 or October 15 date controls the appellate timeline. Even if we assume without deciding that September 25 is the correct date,

our analysis turns on the fact that Atlas filed its notice of appeal during the fifteen-day time period for extensions applicable to the September 25 denial.

Texas Rule of Appellate Procedure 26.3 allows a party to move to extend the time to perfect an appeal if he acts within fifteen days after expiration of the deadline for filing the notice. *See* TEX. R. APP. P. 26.3. The Texas Supreme Court has made it clear that appellate courts should not dismiss an appeal for a procedural defect whenever any arguable interpretation of the rules of appellate procedure would preserve the appeal. *See **Verburgt v. Dorner***, 959 S.W.2d 615, 616 (Tex. 1997).

Even if the appeal deadline was on October 15, which was twenty days after the motion to dismiss was denied by operation of law, Atlas's October 22 notice of appeal was filed within fifteen days of that date. Although Atlas did not file a motion to extend time to file the notice of appeal pursuant to Rule 26.3, because it tendered a notice of appeal within that fifteen-day time period beginning October 15, we imply that it filed a motion to extend. *See **Jones v. City of Houston***, 976 S.W.2d 676, 677 (Tex. 1998); ***Verburgt***, 959 S.W.2d at 617. Further, Atlas filed a response to Scott's motion to dismiss. In that response, Atlas provided a reasonable explanation why its appeal was not timely perfected as required by Rule 10.5(b)(1)(C). *See* TEX. R. APP. P. 10.5(b)(1)(C). Atlas explained its belief that the October 15 written order modified the earlier denial of its motion by operation of law thereby beginning the time to file a notice of appeal on that date, making the notice of appeal timely filed well within the requisite twenty-day period.

Regardless of the accuracy of Atlas's legal interpretation of the controlling date, it indicates the failure to file within twenty days of the date the motion was overruled by operation of law was not deliberate or intentional, but was the result of inadvertence or mistake, and satisfies the requirement for a reasonable explanation to justify the need for an extension. *See **Hone v. Hanafin***, 104 S.W.3d 884, 886 (Tex. 2003) (per curiam). Atlas made a bona fide attempt to invoke the appellate jurisdiction of this court by offering a reasonable explanation for failing to timely file its notice of appeal by October 15, if that was the controlling date. Accordingly, based on the liberal standard for considering untimely appeals, we find this court has jurisdiction to hear Atlas's appeal. *See **id**.* at 888.

## MOTION TO STRIKE

In its third issue, Atlas contends the trial court erred in denying its motion to strike Scott's response to his motion to dismiss as untimely. Appellate courts have jurisdiction over interlocutory orders only when that authority is explicitly granted by statute. *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007). There is no statutory authority for this court to review the denial of Atlas's motion to strike. *See Morrison v. Profanchik*, 578 S.W.3d 676, 681 n.2 (Tex. App.—Austin 2019, no pet.). We overrule Atlas's third issue.

## DISMISSAL ORDER

In its second issue, Atlas asserts that the trial court failed to apply the appropriate standard in its October 15 ruling, and the ruling contradicts itself. Specifically, it complains that the court responded to only three of four criteria that should be addressed, and the court contradicted itself by stating that the commercial speech exemption is established but that Atlas failed to show by a preponderance of the evidence that Scott's claim is based on, relates to, or is responsive to a protected right of Atlas.

The trial court's order denying Atlas's motion to dismiss consists of a paragraph containing the court's findings and a second paragraph, the decretal paragraph, containing the court's ruling. "Decretal" means the granting or denying of the remedy sought. *Redwine v. Peckinpaugh*, 535 S.W.3d 44, 49 (Tex. App.—Tyler 2017, no pet.). The factual recitations preceding the decretal portion of a judgment form no part of the judgment itself. *See Nelson v. Britt*, 241 S.W.3d 672, 676 (Tex. App.—Dallas 2007, no pet.). Where there appears to be a discrepancy between the judgment's recital and decretal paragraphs, a trial court's recitals, which precede the decretal portion of the judgment, do not determine the rights and interests of the parties. *Id*. Rather, the decretal provisions of the judgment control. *Id*.

The decretal portion of the order provides as follows: "IT IS THEREFORE ORDERED, ADJUDGED, and DECREED that the Defendant's **MOTION TO DISMISS** is hereby DENIED." Even assuming the errors complained of by Atlas exist, the factual recitations in the order do not affect the ruling. Further, regardless of whether the motion was denied by operation of law or by the October 15 order, our review of the denial will be de novo such that any factual recitations would be irrelevant in our analysis. We overrule Atlas's second issue.

5

In its fourth issue, Atlas contends the trial court erred by improperly allowing Scott's second amended petition and affidavit, the complained-of videos, and live testimony to be considered at the hearing on its motion to dismiss. In support of this argument, Atlas relies only on the version of Section 27.006(a) that went into effect on September 1, 2019, four months after Scott file this suit against Atlas. Based on the new version's reference to rule of civil procedure 166a, Atlas argues that Scott's affidavit and second amended petition were not timely. It further asserts that Hubbard's live testimony given at the hearing is inadmissible because Rule 166a prohibits oral testimony. Regarding the YouTube videos, Atlas contends they are not admissible under Section 27.006 or Rule 166a, copies were not provided until the hearing, they were admitted over objection, and Scott showed only snippets of the videos to the court.

The TCPA endorses a summary process, requiring judicial review of the pleadings and limited evidence. ***In re Lipsky***, 460 S.W.3d 579, 589 (Tex. 2015). The statute contemplates that the amount and quality of evidence available at the time the motion is filed will be less than that available at trial on the merits or even at the summary-judgment stage. ***Hawkins v. Fox Corp. Hous., LLC***, 606 S.W.3d 41, 45 (Tex. App.—Houston [1st Dist.] 2020, no pet.).

Atlas's arguments are based in large part on the current version of Section 27.006(a) which provides that, in considering whether a legal action is subject to or should be dismissed under Chapter 27, the trial court shall consider the pleadings, evidence a court could consider under Texas Rule of Civil Procedure 166a, and supporting and opposing affidavits. TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a). However, the amendment containing this change became effective September 1, 2019. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 12, 2019 Tex. Gen. Laws. Because the suit was filed before the effective date of that amendment, this case is governed by the statute as it existed before the amendment. *See id*. § 11. Therefore, Atlas's Rule 166a arguments are inapplicable.

The applicable version of Section 27.006 provided that the court shall consider the pleadings and supporting and opposing affidavits. *See* Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 960, 962 (amended 2019) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a)). The statute in effect at the time this suit was filed did not provide a deadline for filing evidence. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a) (current statute provides that the party responding to motion to dismiss shall file the response not later

than seven days before the hearing unless otherwise provided by agreement of the parties or order of the court).

Regarding the videos, their admission was within the trial court's discretion. *See Brown Sims P.C. v. L.W. Matteson, Inc.*, 594 S.W.3d 573, 588-89 (Tex. App.—San Antonio 2019, no pet.). All three videos were created by Atlas and were previously named as exhibits to Scott's earlier pleadings. These videos constitute the heart of the lawsuit and were vital to the questions before the trial court. We discern no abuse of discretion in the trial court's consideration of the videos.

Atlas complains that the second amended petition and affidavit were untimely. The rules of civil procedure allow parties to amend pleadings within seven days of trial with leave of court, which is to be granted unless there is a showing of surprise to the opposite party. *See* TEX. R. CIV. P. 63. Here, the record does not show whether Scott obtained leave of court. However, the petition did not include new causes of action, and the affidavit addressed issues raised in prior pleadings. Atlas has not shown surprise. In the absence of a sufficient showing of surprise by the opposing party, the failure to obtain leave of court when filing a late pleading may be cured by the court's action in considering the amended pleading. *See Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 490 (Tex. 1988). At the hearing, counsel for Atlas asked the court to take judicial notice of the pleadings. In response, the court stated that it would take judicial notice of all pleadings on file by both the plaintiff and the defendant. Therefore, leave of court is presumed. *Id*.

Regarding the live testimony, the trial court may, but is not required to, hear live testimony when determining whether to grant or deny a TCPA motion to dismiss. *Batra v. Covenant Health Sys.*, 562 S.W.3d 696, 707 (Tex. App.—Amarillo 2018, pet. denied). Moreover, we need not consider the live testimony to determine if the trial court's ruling was appropriate because the allegations in the petition and the videos themselves are sufficient for our review. *See Hawkins*, 606 S.W.3d at 44 n.2. We overrule Atlas's fourth issue.

## COMMERCIAL SPEECH EXEMPTION

In Atlas's first issue, it contends the commercial speech exemption to the TCPA does not apply. It argues that the complained-of statements were unrelated to its capacity as a seller of underground bunkers. Rather, Atlas asserts, the videos sought to shed light on business practices

7

that could endanger the public, establish the credibility of Atlas as an expert in the field, show the proper means to construct bunkers, and serve as a demonstration of how a subterranean survival shelter should operate. Atlas also contends there is no nexus between the statements and a commercial transaction. Rather, Atlas contends that the videos were communications of consumer complaints and reviews involving Scott's business, and the statements arose from Scott's products, not Atlas's products. Finally, Atlas asserts that neither its actual or potential customers were the intended audience.

## Standard of Review

We review de novo a trial court's ruling on a TCPA motion to dismiss. *Schmidt v. Crawford*, 584 S.W.3d 640, 646 (Tex. App.—Houston [1st Dist.] 2019, no pet.). In reviewing a trial court's ruling, we consider the pleadings and affidavits of the parties. *See* Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 960, 962 (amended 2019).

## Applicable Law

Under the applicable version of the TCPA, a defendant may move to dismiss a legal action that is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association. *See* Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 960, 962 (amended 2019) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a)). The TCPA defines "exercise of the right of free speech" as a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3). The term "communication" is defined as "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). At the time this suit was filed, "a matter of public concern" was defined as an issue related to health or safety, environmental, economic, or community well-being, the government, a public official or public figure, or a good, product, or service in the marketplace. *See* Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 960, 961 (amended 2019) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7)).

The defendant-movant bears the initial burden of showing that the conduct that forms the basis of the claim against it is protected by the TCPA, that is, that the suit is based on, relates to, or is in response to the movant's exercise of its right to free speech, association, or petition. *See* Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 960, 962 (amended 2019) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b)); *Castleman v.*

*Internet Money Ltd.*, 546 S.W.3d 684, 691 (Tex. 2018) (per curiam). If the defendant meets this burden, then the burden shifts to the plaintiff-nonmovant to establish by clear and specific evidence a prima facie case for each essential element of the claim in question. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); *Castleman*, 546 S.W.3d at 691. If the nonmovant fails to satisfy its burden to present a prima facie case, the trial court must dismiss the action. *Castleman*, 546 S.W.3d at 691. However, if the nonmovant satisfies its burden, the movant may still obtain a dismissal if it establishes each essential element of a valid defense to the nonmovant's claim. *See* Act of May 24, 2013, 83rd Leg., R.S., ch. 1042, § 2, Tex. Gen. Laws 2501, 2501 (amended 2019) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d)); *Castleman*, 546 S.W.3d at 691.

Intertwined with and overlying this multi-step dismissal process is the TCPA provision exempting certain actions from the TCPA's application. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.010; *Morrison*, 578 S.W.3d at 680. The exemption at issue here, the commercial speech exemption, provides that the TCPA, and its dismissal provisions, does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer. TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(a)(2). When invoked, the trial court must consider an exemption's applicability after and in the context of the movant having met its initial burden under the first step of the dismissal process. *See Castleman*, 546 S.W.3d at 688; *Morrison*, 578 S.W.3d at 680. The party asserting the commercial speech exemption bears the burden of proving its applicability by a preponderance of the evidence. *Hieber v. Percheron Holdings, LLC*, 591 S.W.3d 208, 211 (Tex. App.—Houston [14th Dist.] 2019, pet. denied); *Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 887 (Tex. App.—Austin 2018, pet. denied). In deciding whether the nonmovant has satisfied that burden, the scope of our review includes the pleadings and any supporting affidavits, both of which are taken as evidence in the TCPA context. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.006; *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017); *Hieber*, 591 S.W.3d at 211. If an action falls under a TCPA exemption, the TCPA does not apply and may not be used to dismiss the action. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.010; *Best v. Harper*, 562 S.W.3d 1, 11-12 (Tex. 2018). Accordingly, application of an exemption means the

nonmovant need not make its prima facie case. *See **Round Table Physicians Group, PLLC v. Kilgore***, 607 S.W.3d 878, 883 (Tex. App.—Houston [14th Dist.] 2020, pet. filed).

**Freedom of Speech**

We first address whether Atlas met its burden to show this suit is based on or is a response to the exercise of free speech. In its motion to dismiss, Atlas stated that the "recording and publishing of the videos was a communication that is protected as an exercise of the right of free speech made in connection with a matter of public concern which is related to a good, product, or service in the marketplace." We agree the videos constitute a communication. One purpose of the videos was to warn the public about an inferior product that could harm the public, a matter of public concern under the TCPA. *See* Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 960, 961 (amended 2019); ***Epperson v. Mueller***, No. 01-15-00231-CV, 2016 WL 4253978, at *10 (Tex. App.—Houston [1st Dist.] August 11, 2016, no pet.) (mem. op.) (held that statements regarded a matter of public concern because they relate to the quality of plaintiff's goods). We conclude Atlas's videos are an exercise of the right of free speech. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 21.001(3).

Scott complained in its petition of two videos posted by Atlas in April 2019 and one posted June 23, after the onset of litigation. The third video is allegedly in violation of the parties' Rule 11 agreement and is the basis of Scott's breach of contract claim. Scott alleged that the videos posted on the internet by Atlas contain numerous false statements of fact concerning Clyde Scott and Rising S Company. Scott asserted that Atlas did not make reasonable efforts to verify its claims, knew the claims were false, or recklessly disregarded the truth when making the statements. Scott further alleged that Atlas made the comments for the malicious purpose of injuring Rising S's business reputation. We conclude that Scott's claims for libel, business disparagement, and breach of contract are based on, related to, or were in response to Atlas's exercise of its right of free speech. *See* Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 960, 961-62 (amended 2019); TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(1), (3); ***Adams v. Starside Custom Builders, LLC***, 547 S.W.3d 890, 894-95 (Tex. 2018).

However, Scott's cause of action for fraudulent misrepresentation concerns a phone call made by Ron Hubbard to Scott's attorney in which Hubbard claimed to be an attorney and discussed settlement of the case. Because this claim is not based on Atlas's exercise of the right

10

of free speech, right to petition, or right of association, this claim cannot be dismissed pursuant to the TCPA.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b).

**Commercial Speech Exemption**

We now address Scott's contention that the motion to dismiss was properly denied because the libel, business disparagement, and breach of contract claims fall under the TCPA's commercial speech exemption.  The supreme court has determined that this exemption applies when the nonmovant proves each of the following elements:

(1)  The defendant was primarily engaged in the business of selling or leasing goods;
(2)  The defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services;
(3)  The statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides; and
(4)  The intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides.

*Castleman*, 546 S.W.3d at 688.  Atlas does not challenge the first element, that it was primarily engaged in the business of selling survival shelters.  We consider the evidence to determine if Scott met its burden as to the remaining three elements.

*Atlas's Capacity*

Regarding the second element, we review the context of the statements to determine whether the challenged statements propose a commercial transaction, as they would if made in the capacity as a seller.  *See* ***Hawkins***, 606 S.W.3d at 47.  Atlas argues that its statements were unrelated to its capacity as a seller of its bunkers.  Instead, it asserts, the statements are a review of products in the marketplace rather than an attempt by Atlas to sell its own products.  Atlas does not dispute that the communications include certain references to its products but argues that the videos seek to shed light on business practices that could endanger the public.  It further argues that the comparisons made between Scott's products and Atlas's products help to establish Atlas's and Hubbard's credibility as an expert in the field of disaster preparedness, show the proper means to construct bunkers to avoid certain issues, and serve as a demonstration of how a subterranean survival shelter should operate if properly constructed and installed.  Thus, it argues, the statements were made to address matters relating to health, safety, environmental well-being, economic well-being, community well-being, or relating to a public figure, or concerning a product in the marketplace.  Finally, Atlas points to the 2019 amendment

to Section 27.010, which states that the commercial speech exemption does not apply to consumer opinions, commentary, complaints, or review of businesses, to argue that legislative intent is to prevent filing lawsuits as a means to limit consumer reviews such as those Scott now complains of.

In its petition, Scott alleged that Atlas used the videos to advertise its products and, because they are direct competitors, the audience of the videos is comprised of Scott's potential clients. At the time the "Texas Man" video was published, Atlas had more than 68,000 subscribers. More than 21,000 viewers watched "Texas Man," and more than 47,000 individuals watched "Lady in Minnesota." Attached to the petition is a printout of online comments made by viewers of the videos. Some of those commentators state they will not purchase from Scott and some say they will purchase from Atlas after watching the "Texas Man" video. Scott also alleged that, "[a]t all times in the Original Videos, Mr. Hubbard is acting in his capacity as owner and representative of Defendant." The videos were posted to Atlas's YouTube account which Atlas uses to advertise its products and services. The "Lady in Minnesota" video opens and ends with the Atlas logo. In both videos, Mr. Hubbard opens by saying "welcome back to another episode of Atlas Survival Shelters" and states that Rising S is a competitor of his. In the "Lady in Minnesota" video, Hubbard references, shows, and advertises Atlas's products and services in comparison to Scott's products and services. Scott also alleges that the "Lady in Minnesota" video asks viewers to subscribe to Atlas's YouTube channel. Scott's petition alleges that, in the "Texas Man" video, Atlas "advertises the ease of installing Defendant's bunkers and asks viewers to email or call him if they are interested in one of Defendant's bunkers."

While Atlas's statements in the videos are undoubtedly "reviews" of Scott's products, those reviews are a part of Atlas's advertising scheme. Hubbard is not just an "expert" in his field purportedly warning the public of a dangerous individual who sells inferior products. He owns a company admittedly in competition with Scott. By encouraging viewers to compare products offered by the two companies, Hubbard not only reviewed Scott's products but, simultaneously offered up Atlas's products as the superior alternative. Even if we agree with Atlas's interpretation and applicability of the legislature's intent as shown by the 2019 amendment, the fact remains that its "reviews" are immersed in and interconnected with Atlas's role as a seller of underground survival shelters. We conclude that Scott has shown that Atlas

was acting in the capacity of seller of underground bunkers and bunker services when it published the videos, satisfying the second *Castleman* element.

*Commercial Transaction*

Regarding the third element, Atlas asserts there is no nexus between the statements and a specific commercial transaction. Atlas contends that it does not sell the same product as Scott. It also explains that, because the videos involved Scott's prior customers discussing Scott's products, the statements do not arise from a commercial transaction involving goods Atlas provided. Atlas contends the statements cannot be barred merely because they have a connection to a commercial competitor. Asserting that the videos were communications of consumer complaints and reviews involving Scott's business, Atlas claims this is the exact sort of communication the TCPA was designed to protect.

In its petition, Scott alleges it and Atlas are direct competitors. Hubbard admits the two companies are competitors and, in the videos, compares the products of the respective companies. The videos described commercial transactions in which two different customers purchased an underground bunker from Scott. Neither the TCPA nor *Castleman* requires the commercial transaction referenced in the third element be one conducted by the defendant, only that it involve the kinds of goods or services the defendant provides. The third *Castleman* element examines whether "the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides." *Novosad v. LSG Vodka LLC*, No. 03-18-00804-CV, 2020 WL 4726599, at *6 (Tex. App.—Austin July 31, 2020, no pet.) (mem. op.). This element can be restated as asking whether the statement or conduct at issue arose from the sale of services that the defendant provides. *Id.*; *see also Martin v. Walker*, 606 S.W.3d 565, 570 (Tex. App.—Waco 2020, pet. filed). Here, although there are differences in how Scott's and Atlas's shelters are built, they each sell the same kind of good, underground survival shelters, in the market place to a common customer base. *See Morrison*, 578 S.W.3d at 683 ("A defendant's online review of a competitor's sale and installation of the same product sold and installed by the defendant is a statement that meets" the third element of the commercial speech exemption.). Scott met its burden to prove the third *Castleman* element.

*Intended Audience*

Regarding the fourth element, Atlas contends the intended audience was neither actual nor potential Atlas customers. Atlas asserts that the parties sell similar, but not identical,

products, apparently insinuating the two companies would have a different customer base. Atlas contends its "reviews" were recorded videos with former Scott customers explaining the issues they had with Scott's business, and not attempts to encourage customers to do business with Atlas.

The evidence shows that Atlas and Scott are competitors in the same industry. The videos were posted on the internet channel Atlas used to advertise its products, and Hubbard invited viewers to contact him regarding his survival shelters. Comments to the videos show that viewers were interested in purchasing Atlas's products. Again, the fact that there are differences in the products made by Scott and Atlas does not lead to the conclusion that wholly different groups constitute the actual or potential customers of each company. We conclude that the intended audience of the videos was comprised of actual or potential buyers or customers of Atlas's products. *See Epperson*, 2016 WL 4253978, at *11.

Scott met its burden to show the commercial speech exemption applies. Therefore, the TCPA does not apply to this suit, and the trial court did not err in denying Atlas's motion to dismiss. *See Best*, 562 S.W.3d at 12. Because the commercial speech exemption is dispositive of this case, we need not address whether Scott met its burden to prove a prima facie case. *See* TEX. R. APP. P. 47.1; *Hieber*, 591 S.W.3d at 213. We overrule Atlas's first issue.

### DISPOSITION

Because Atlas has not shown trial court error, we ***affirm*** the trial court's order denying Atlas's motion to dismiss.

GREG NEELEY
Justice

Opinion delivered November 18, 2020.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

14



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**NOVEMBER 18, 2020**

**NO. 12-20-00054-CV**

**ATLAS SURVIVAL SHELTERS, LLC,**
Appellant
V.
**CLYDE SCOTT AND RISING S COMPANY, LLC,**
Appellees

---

Appeal from the 294th District Court
of Van Zandt County, Texas (Tr.Ct.No. 19-00111)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this Court that there was no error in the trial court's order.

It is therefore ORDERED, ADJUDGED and DECREED that the order of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the appellant, **ATLAS SURVIVAL SHELTERS, LLC**, for which execution may issue, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*